IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN HERD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:22-cv-00417-DGK |
| COMPASS GROUP USA, INC. | ) ) | |
| Defendant. | ) ) | |

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING CASE

This employment case arises from Defendant Compass Group USA, Inc.'s ("Compass") discipline of Plaintiff John Herd. Plaintiff filed a single-count lawsuit in Missouri state court alleging age discrimination in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 *et seq*. ECF No. 1-1. Compass removed to this Court, ECF No. 1, and it promptly moved to compel arbitration and dismiss or stay this case, ECF No. 6.

Because there is a valid and enforceable arbitration agreement that covers all claims in this case, Compass's motion is GRANTED and this case is STAYED pending arbitration. The parties shall file a status report regarding arbitration every 90 days.

### Undisputed Material Facts[1]

Plaintiff worked as supervisor in the food services department at Children's Mercy Hospital for nearly 20 years. For much of this time, Plaintiff was employed by Sodexo, which had contracted with Children's Mercy to provide the food services at the hospital. That changed in

---

[1] Where, as here, the "parties submit affidavits in conjunction with a motion to compel arbitration, [the Court] treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Markets Live, Inc.*, 20 F.4th 400, 403 (8th Cir. 2021).

early 2020, when the food services contract at Children's Mercy changed from Sodexo to Aramark to Compass in a six-month period.

In support of this motion, Compass submitted the affidavits of two employees, Lynn Macenko and Chad Crabtree, who had first-hand knowledge regarding the Aramark to Compass transition at Children's Mercy. In March 2020, after Compass had taken over the food services contract from Aramark, it extended offers of employment to some of the existing Aramark employees who had applied for the position. Plaintiff was among those who received an offer. The offer letter makes clear multiple times that Plaintiff's offer was "contingent upon your successful completion of any applicable pre-screening requirements." ECF No. 10-1. According to Macenko and Crabtree, Plaintiff's employment was contingent upon him reviewing and agreeing to Compass's various employment policies and required documents, including a Mutual Arbitration Agreement ("Arbitration Agreement").

On March 20, 2020, Compass placed an electronic onboarding station at Children's Mercy to allow Aramark employees to complete the pre-employment documents referenced in the offer letters. This station allowed employees to review the documents, provide the necessary information, and electronically sign them. Plaintiff's offer letter, the Arbitration Agreement, and a W-4 all have signature lines for him that bear the following notation: "Digitally signed by: John Herd on 03/20/2020." ECF Nos. 7-2 at 2; 10-1 at 5, 7. The Arbitration Agreement and the offer letter are dated "03/20/2020." *Id.* The W-4 form also includes Plaintiff's social security number and, on that same date, Plaintiff filled out an emergency contact form. ECF No. 10-1 at 7, 12. Upon completion, the documents were emailed to Plaintiff.

The Arbitration Agreements is a single page and contains the following heading at the top in large font: "**MUTUAL ARBITRATION AGREEMENT**". ECF No. 7-2 (emphasis in original). The first paragraph immediately makes clear:

> I and Compass Group USA, Inc. and its subsidiaries, sectors, affiliates, and divisions (collectively, "Compass Entities") mutually agree to utilize binding individual arbitration as the sole and exclusive means to resolve all legal claims between us, including without limitation those that may arise out of or be related to my employment, compensation, or termination of employment. I and the Compass Entities waive our rights to bring a claim against the other in a court of law and in doing so, ***specifically waive our rights to a jury.*** Except as provided below, any claim, dispute, and/or controversy that I may have against the Compass Entities (or their directors, officers, employees, or agents), or that the Compass entities may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA").

*Id.* (emphasis in original).

The document is repeatedly referred to as "this Agreement" throughout the text. And towards the end of document, it makes clear that: "***I may opt out of this Agreement by sending written correspondence*** via certified mail to…clearly and unambiguously indicating that I opt out of the Agreement. Correspondence must be received within 30 days of execution of this Agreement, and if not, this Agreement is binding." *Id.* (emphasis in original). Shortly thereafter, it states: "This is the entire agreement between myself and the Compass Entities regarding dispute resolution." *Id.*

The document then concludes with: "I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE, AMONG OTHERS, ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT. DO NOT SIGN UNTIL YOU HAVE READ AND AGREED WITH THE ABOVE AGREEMENT." *Id.* (emphasis in original). Directly below that statement is the following:

Print Full Name __John  Herd_____

Signature ✓ Digitally signed by: John Herd on 03/20/2020
_____

Date __03/20/2020_____

[RETAIN IN EMPLOYEE PERSONNEL FILE

*Id.*

There are no other signature lines on the document, and the directly above is the last text of the Arbitration Agreement. *Id.* Plaintiff avers that he does "not recall" either physically or electronically "reading, understanding, or signing" the Arbitration Agreement. He further avers that he did not receive any additional consideration or compensation for signing the Arbitration Agreement, and that he does not recall being informed that his continued employment with Compass constituted acceptance of an agreement.

Only a few months after the Arbitration Agreement was completed, Defendant allegedly disciplined or scrutinized Plaintiff for allegedly adding fraudulent time to his timecard. Plaintiff denies that he committed any fraud and alleges that he was mistreated because of his age.[2] Plaintiff later filed a one-count age discrimination lawsuit against Compass in state court.

## **Standard**

The Federal Arbitration Act ("FAA") applies here. The FAA "establishes a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation marks omitted). The FAA requires this Court to order arbitration so long as: (1) "a valid [arbitration] agreement exists"; and (2) "the dispute falls within the scope of that agreement." *Duncan v. Int'l Markets Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) (internal

---

[2] It is unclear from Plaintiff's complaint or the briefing whether he is still employed by Compass or precisely what, if any, adverse action Compass may have taken against him.

quotation marks omitted). "The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).

## Discussion

Compass argues that both elements mandating arbitration are clearly met here because the Arbitration Agreement is valid and its language clearly covers the employment dispute between it and Plaintiff. Plaintiff counters that the agreement is invalid because there is no proof that he signed the agreement, Compass did not sign the agreement, and there is insufficient consideration.

Missouri law governs whether the Arbitration Agreement is valid. *See Triplet*, 42 F.4th at 870 (state law governs the issue of validity). Under Missouri law, "the essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (internal quotation marks omitted). "An offer is made when the offer leads the offeree to reasonably believe that an offer has been made." *Miller v. Securitas Sec. Servs. USA Inc.*, 581 S.W.3d 723, 729 (Mo. Ct. App. 2019) (internal quotation marks omitted). In other words, "an offer is the manifestation of a willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (internal quotation marks omitted). Acceptance, on the other hand, "is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Id.* at 730 (internal quotation marks omitted). When "there is a definite offer and unequivocal acceptance," a "meeting of the minds" has occurred sufficient to form a contract. *Id.* (internal quotation marks omitted). That leaves consideration, which can be satisfied by mutual promises to arbitrate. *See Baker*, 450 S.W.3d at 786–87.

5

Even when the record is viewed in the light most favorable to Plaintiff, it is clear that the Arbitration Agreement is a valid contract. First, the Arbitration Agreement sent to Plaintiff was a definite offer: it repeatedly made clear it was an agreement to arbitrate between the parties and that by signing the document—and not opting out—Plaintiff was bound by its terms. The logical conclusion from the language in the document is that it is an offer to arbitrate disputes, and Plaintiff's signature will conclude the bargain. *See Miller*, 581 S.W.3d at 729 (finding an offer had been made based on similar language); *see also Keplinger v. Securitas Sec. Servs. USA, Inc.*, No. 3:20-CV-05117-MDH, 2021 WL 1395206, at *2 (W.D. Mo. Apr. 12, 2021).

Second, Plaintiff unequivocally accepted that offer by affixing his digital signature to the document. *See Franks v. Guckenheimer Enters., Inc.*, No. 4:19-CV-1845-RWS, 2019 WL 5864118, at *1 (E.D. Mo. Nov. 8, 2019) (digital signature constituted acceptance of arbitration agreement); *In re H & R Block IRS Form 8863 Litig.*, No. 4:13-MD-02474-FJG, 2014 WL 3401010, at *2 (W.D. Mo. July 11, 2014) (same). And Plaintiff's averment that he does not *recall* signing the Arbitration Agreement does not mean he did not do so. To the contrary, the objective, undisputed evidence shows that Compass presented Plaintiff with numerous documents as a condition of employment, Compass set-up a station so Plaintiff could access those documents electronically at work, and Plaintiff signed them digitally on the same day and in the same way. *See Miller*, 581 S.W.3d at 730 ("Whether there exists mutual assent sufficient to form a contract is dependent upon the *objective* intentions of the parties, which are determined by reviewing the parties' actions and words." (internal quotation marks omitted)).

Third, valid consideration exists. The Arbitration Agreement makes clear that the parties exchanged unequivocal promises to arbitrate all disputes between them. That, standing alone, is

enough consideration to form a binding arbitration agreement.  *See Baker*, 450 S.W.3d at 786; *Franks*, 2019 WL 5864118, at *1.

And contrary to Plaintiff's argument, the contract is not invalid simply because it does not contain a signature from Compass.  The cases that Plaintiff relies upon for this proposition are distinguishable because they involved a contract that contained a line for the offeror to also sign that was left blank.  *See, e.g., Barksdale v. Backyard Prods., LLC*, No. 4:19-CV-06074-DGK, 2019 WL 4889737, at *2 (W.D. Mo. Oct. 3, 2019); *McFadden v. Van Chevrolet-Cadillac, LLC*, No. 18-00395-CV-W-BP, 2018 WL 3715756, at *3 (W.D. Mo. Aug. 3, 2018); *Baier v. Darden Rests.*, 420 S.W.3d 733, 739 (Mo. Ct. App. 2014).  In those case, the courts found that the offeror's failure to sign the contract provided evidence that it did not intend to be bound by the agreement.  *Id.* Here, there was no signature line for Compass, and the language of the Arbitration Agreement made clear that it was an offer to arbitrate that would be made final and binding when Plaintiff signed it.  And after Plaintiff signed the Arbitration Agreement, he was hired by Compass.  So Compass's lack of signature on the document does not invalidate the contract.  *See Keplinger*, 2021 WL 1395206, at *2 (holding arbitration agreement was valid despite lack of signature from defendant); *Franks*, 2019 WL 5864118, at *1–2 (same); *In re H & R Block IRS Form 8863 Litig.*, 2014 WL 3401010, at *2 (same); *Houston v. NPC Int'l, Inc.*, No. 13-01160-CV-W-GAF, 2014 WL 12779236, at *3 n.2 (W.D. Mo. Mar. 24, 2014).

Since the Arbitration Agreement is valid, that leaves only the issue of whether it covers the claims here.  That cannot be disputed.  The Arbitration Agreement clearly applies to all issues arising from the employment relationship between Compass and Plaintiff, and the dispute here is over alleged employment discrimination by Compass.

7

Accordingly, Compass's motion is GRANTED. Plaintiff is ORDERED to arbitrate his claims in accordance with the Arbitration Agreement. And although Compass makes a perfunctory argument for dismissal, it does not explain in detail why it is appropriate here. So in line with common practice in this Circuit, this case is STAYED pending arbitration. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) ("The FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it.").

## Conclusion

For the foregoing reasons, Compass's motion is GRANTED and this case is STAYED pending arbitration. The parties shall file a status report regarding arbitration every 90 days.

**IT IS SO ORDERED.**

Date: <u>January 13, 2022</u>　　　　　　　　　　<u>　/s/ Greg Kays　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT